1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  CHARLES JOHNSON,                          CASE NO. 08cv1242-H (JMA)

12                            Plaintiff,      **ORDER DENYING**
                                              **DEFENDANTS' MOTION TO**
         vs.
13                                            **DISMISS and STRIKING**
                                              **MONETARY RELIEF AGAINST**
14  A. FIGUEROA, Corrections Officer; T.      **DEFENDANTS IN THEIR**
    DAVIS, Corrections Officer; SGT.          **OFFICIAL CAPACITIES**
15  PRECIADO, Corrections Sergeant;
    ORDUNA, Registered Nurse; D. BELL,
16  Correctional Counselor; L. GUTERREZ; G.
    STRATTON, Corrections Captain; R.
17  DELGADO, Associate Warden; N.
    GRANNIS, Chief of Inmate Appeals Branch;
18  and L. SCRIBNER, Warden of Calipatria
    State Prison,
19
                            Defendants.
20

21         On July 11, 2008, Charles Johnson ("Plaintiff"), a California prisoner proceeding *pro*

22  *se* and *in forma pauperis*, filed an action against Defendants pursuant to 42 U.S.C. § 1983 and

23  28 U.S.C. § 1915(a).  (Doc. No. 1.)  On January 2, 2009, Defendants[1] moved to dismiss the

24  complaint, alleging that Plaintiff failed to exhaust state administrative remedies prior to filing

25  in federal court and that Defendants are immune from liability under the Eleventh Amendment

26  to the Federal Constitution. (Doc. No. 15.)  On December 1, 2008, Plaintiff filed an Opposition

27  to Defendants' Motion to Dismiss.  (Doc. No. 20.)

28
    _____
         [1]At the time of this Order, Defendants Preciado, Guterrez, Davis, and Scribner were not served.

1    The Magistrate Judge issued a Report and Recommendation on April 13, 2009

2  recommending that this Court grant in part and deny in part Defendants' Motion to Dismiss.

3  (Doc. No. 22.) Plaintiff filed his Objection to the Report and Recommendation on May 4, 2009.

4  (Doc. No. 23.)  Plaintiff included supplemental documents in his Objection to address the

5  recommended dismissal of one of his claims.

6    For the reasons below, the Court ADOPTS in part the Magistrate Judge's Report and

7  Recommendation, DENIES Defendants' Motion to Dismiss, and STRIKES all monetary

8  damages against Defendants in their official capacities.

9    **Background**

10 **A.    Civil Rights Allegations.**

11    Plaintiff alleges that he is hemiplegic with paralysis in his right should, arm, and hand.

12 (Doc. No. 1 at 3.)  As a result of his medical condition, a medical order was issued on

13 December 5, 2007 that required the use of waist chains rather than handcuffs to transport

14 Plaintiff to and from therapy appointments.  (Doc. No. 1 at 4.)  On several occasions between

15 late November 2007 and early January 2008, Defendants Figueroa and Davis refused to use

16 waist chains and demanded that Plaintiff submit to handcuffs before being transported to

17 therapy, even though Plaintiff informed Defendants of the medical order requiring waist chains.

18 (Doc. No. 1 at 3.)  Plaintiff submitted to handcuffs to get to his therapy appointments, but they

19 had to be removed due to pain.  (Doc. No. 1 at 3.)  Plaintiff alleges that he sought assistance

20 from Defendant Preciado, a correctional sergeant, but Defendant Preciado sided with

21 Defendants Figueroa and Davis.

22    Plaintiff filed an administrative appeal seeking accommodation under the Americans

23 with Disabilities Act (ADA) by requiring prison staff to use waist chains instead of handcuffs.

24 (Doc. No. 1 at 4.)  The appeal was granted in full at the first level of review on December 20,

25 2007.  (Doc. No. 1 at 4.)  Plaintiff alleges that prison officials retaliated against him after the

26 appeal was granted by refusing him medical care and by transferring him to Kern Valley State

27 Prison. (Doc. No. 1 at 4.)  Moreover, Plaintiff alleges that Defendants Bell, Stratton, Delgado,

28 Grannis, and Scribner failed to accommodate his ADA appeal by refusing him medical care.

1  (Doc. No. 1 at 3.)

2      Plaintiff seeks $75,000 in damages and an injunction preventing Defendants from

3  denying him medical treatment, including transportation to and from physical therapy, and

4  preventing Defendants from harassing, punishing, or retaliating against him. (Doc. No. 1 at 7.)

5                                    **Discussion**

6  **A.      Claim 1 and Exhaustion of State Remedies.**

7      Plaintiff's first claim against Defendants is failure to provide medical care. Defendants

8  move for dismissal because state administrative remedies are supposedly not exhausted. The

9  Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), states that "[n]o action shall be

10 brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law,

11 by a prisoner confined in any jail, prison or other correctional facility until such administrative

12 remedies as are available are exhausted." Inmate suits about prison life, including specific

13 instances of alleged abuse, fall under PRLA and are subject to the exhaustion requirement.

14 Porter v. Nussle, 534 U.S. 516, 532 (2002). PRLA's exhaustion requirement is mandatory so

15 as to provide state correctional facilities the opportunity to internally address any complaints

16 before judicial involvement. Porter, 534 U.S. at 524. Failure to exhaust available

17 administrative remedies prior to filing suit is properly remedied through dismissal without

18 prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003); McKinney v. Carey, 311

19 F.3d 1198, 1199 (9th Cir. 2002). Because the exhaustion requirement constitutes an

20 affirmative defense, a defendant bears the burden of raising the defense and proving the absence

21 of exhaustion. Wyatt, 315 F.3d at 1119.

22     When pursuing state administrative remedies, prisoners are only required under PRLA

23 to exhaust those remedies that are readily available. Booth v. Churner, 532 U.S. 731, 736

24 (2001). If a remedy is no longer available, a prisoner does not need to pursue that

25 administrative course any longer. Brown v. Valoff, 422 F.3d 926, 935-36 (9th Cir. 2005). The

26 Ninth Circuit in Valoff noted that a prisoner "need not press on to exhaust further levels of

27 review once he has either received all 'available' remedies at an intermediate level of review

28 of been reliable informed by an administrator that no remedies are available." 422 F.3d at 935.

1   <u>Valoff</u> further stated that an inmate might want to appeal every issue to the highest level to

2   avoid an exhaustion issue, but that "over-exhaustion" is not required once relief is no longer

3   "available."  422 F.3d at 935.  Other circuits are in accord with this approach.  <u>See</u> <u>Ross v.</u>

4   <u>County of Bernalillo</u>, 365 F.3d 1181, 1187 (10th Cir. 2004) (noting that once a prisoner has

5   received all available relief under administrative procedures the administrative relief has been

6   exhausted); <u>Abney v. McGinnis</u>, 380 F.3d 663 (2d Cir. 2004) (observing that further exhaustion

7   attempts are unnecessary when if there no possibility of some relief).

8         Under California law, prisoners may appeal any departmental action, decision, condition,

9   or policy that is perceived to adversely affect an individual's welfare, Cal. Code Regs. tit. 15,

10   § 3084.1(a), or may appeal misconduct by correctional officials or officers, Cal. Code Regs. tit.

11   15, § 3084.1(e).   The administrative process has several levels of appeal: (1) informal

12   resolution; (2) written appeal on Inmate Appeal Form 602; (3) subsequent appeal to the

13   institution's head; and (4) final level of appeal to the Director of the California Department of

14   Corrections and Rehabilitation.  <u>See</u> <u>Barry v. Ratelle</u>, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).

15   The final level of appeal to the Department of Corrections Director is not further appealable,

16   and therefore state administrative remedies are exhausted at this point.  Cal. Code Regs. tit. 15,

17   §§ 3084.1(a) and 3084.5(e)(2).

18         Defendants have not carried their burden to show that Plaintiff failed to exhaust state

19   administrative processes.  Defendants acknowledge that Plaintiff's ADA appeal was granted

20   at the first level of review (Doc. No. 15 at 8; Declaration of D. Edwards at ¶8(a)), but

21   Defendants proceed to argue that even though Plaintiff's appeal was granted at the first level,

22   Plaintiff still had an obligation to seek further review at the second or third level. (Doc. No. 15

23   at 8.)  Defendant's contention lacks merit.  <u>Valoff</u> noted that a prisoner "need not press on to

24   exhaust further levels of review once he has either received all 'available' remedies at an

25   intermediate level of review of been reliable informed by an administrator that no remedies are

26   available."  422 F.3d at 935.

27         Plaintiff filed an appeal regarding his first claim for inadequate medical care, and the

28   appeal was granted in full at the first level of review.  (Declaration of D. Edwards at ¶8(a)).

1   Defendants cannot show absence of exhaustion unless some relief remains available to the

2   Plaintiff at unexhausted levels of the grievance process. <u>Valoff</u>, 422 F.3d at 936-37.  All relief

3   sought in the present appeal was granted, and therefore there was no further remedy or relief

4   that Plaintiff could have sought on a second or third level appeal.  <u>See</u> <u>Valoff</u>, 422 F.3d at 935.

5   This is further supported by the Declaration of T. Emigh, Assistant Chief of the Inmate Appeals

6   Branch, which states, "A disability appeal is not necessarily rejected and screened-out because

7   a CDC-1824 has been deemed (granted) at the first level of review.  If the inmate can

8   demonstrate that the alleged grant does not fully resolve the issues raised, the matter can be

9   further appealed." (Dec. of Emigh at 5.)  Defendants' declarations indicate that a complaint can

10  be further appealed if the inmate can show that the granted relief does not entirely resolve the

11  issues raised, but in this case the first-level review granted everything that Plaintiff sought.  This

12  result comports with the policy behind the PRLA, which is to allow state administrative

13  agencies the opportunity to internally correct errors before litigation proceeds in federal court.

14  <u>Porter</u>, 534 U.S. at 524.   Plaintiff filed an internal appeal in this case, and the prison

15  acknowledged and corrected the error at the first level of review, thus removing any need for

16  further internal review.

17         Defendants' further argue that the appeal letter indicating that the appeal had been

18  granted contained language indicating that Plaintiff could appeal the issue to a second level of

19  review if desired.  (Doc. No. 15, App. B.)  Since Plaintiff received relief at the first level of

20  review, there was no need or desire to appeal to higher levels of review.

21         Accordingly, the Court denies Defendants' Motion to Dismiss Claim 1 due to

22  unexhausted state administrative remedies.

23  **B.      Claim 2 and Exhaustion of State Remedies.**

24         Plaintiff's second claim against Defendants is that they retaliated against Plaintiff for

25  filing his medical appeal by transferring him to another prison.  (Doc. No. 1 at 3.)  Defendants

26  move to dismiss based on failure to exhaust state administrative remedies.  (Doc. No. 15 at 8-9.)

27  The Magistrate Judge recommended dismissal because the record at the time the Report and

28  Recommendation was issued showed that Plaintiff had failed to file an appeal regarding his

1 retaliation claim through the prison grievance system.  (Doc. No. 22 at 7-8.)  Plaintiff in his

2 Objection provided further documentation in support of his contention that he had properly

3 exhausted the retaliation claim, but the Magistrate Judge did not have this information available.

4 (Doc. No. 23.)

5       Plaintiff's Objection demonstrates that he exhausted his state administrative remedies

6 for this retaliation claim.  Plaintiff filed a CDC-1824 Form on February 16, 2008 that was

7 formally received on February 21, 2008 and assigned log number CAL-I-08-00280.  (Doc. No.

8 23, App. A at 1-2.)  Defendants' records confirm that this appeal was received.  (Doc. No. 15,

9 Declaration of D. Edwards, App. C.)  Plaintiff included his CDC-1845 and CDC-7410 medical

10 forms with the appeal.  (Doc. No. 23, App. A at 3-4.)  Plaintiff's complaint was resolved at the

11 second level on March 13, 2008 when the appeal was granted.[2]  (Doc. No. 23, App. A at 6; Doc.

12 No. 15, Declaration of D. Edwards, App. C.)  On May 8, 2008, the Inmate Appeals Branch

13 screened-out Plaintiff's appeal from the third level of review because the appeal form should

14 have been completed through the second level of review prior to a being submitted for a third-

15 level review.  (Doc. No. 23, App. A at 8.)

16       Valoff noted that a prisoner "need not press on to exhaust further levels of review once

17 he has either received all 'available' remedies at an intermediate level of review of been reliable

18 informed by an administrator that no remedies are available."  422 F.3d at 935.  Plaintiff filed

19 his transfer complaint, which was answered at the second level of review.  Plaintiff's third-level

20 appeal was later screened-out.  Plaintiff has shown that he went through the state administrative

21 process to have his complaint addressed, and that the state did address his retaliation complaint

22 through its internal processes.

23       Accordingly, the Court denies Defendants' Motion to Dismiss the retaliation claim.

24 ///

25 ///

26 ///

27

28       [2]In his administrative appeal, Plaintiff requested that his current medical status be rescinded and that his transfer be reconsidered based on current medical evaluation forms.  (Doc. No. 23, App. A at 6.)

1 **B.      Eleventh Amendment Immunity.**

2        Defendants contend that they are immune from suit under the Eleventh Amendment to

3 the Federal Constitution.  (Doc. No. 15 at 4-6.)  Suits against officials acting in their official

4 capacity are essentially suits against the state, and therefore monetary damages sought against

5 an official acting in his official capacity are barred by immunity.   Will v. Michigan Dept. Of

6 State Police, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, allows civil actions

7 seeking injunctive relief against state officials, and actions seeking monetary damages from an

8 official in his personal capacity.  Will, 491 U.S. at 71; Romano v. Bible, 169 F.3d 1182, 1186

9 (9th Cir. 1999).  (Doc. No. 1 at 1-3; Doc. No. 20 at 4-5.)  Accordingly, the Court strikes any

10 request for monetary damages against Defendants in their official capacities.  The Court notes,

11 however, that Plaintiff is suing all Defendants in their official and personal capacities, and that

12 Plaintiff seeks injunctive relief.  Damages sought in their personal capacities and injunctive

13 relief remain available.

14                              **Conclusion**

15        For the reasons stated above, the Court ADOPTS in part the Magistrate Judge's Report

16 and Recommendation, the Court DENIES Defendants' Motion to Dismiss, and the Court

17 STRIKES any monetary damages against Defendants in their official capacities.

18 IT IS SO ORDERED.

19 DATED: July 7, 2009

20

21                              **MARILYN L. HUFF, District Judge**

22                              **UNITED STATES DISTRICT COURT**

23

24 COPIES TO:

25 All parties of record.

26

27

28