1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10   CHARLES JOHNSON,                          Civil No.    08-cv-1242-POR (JMA)

11                              Plaintiff,      **ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANTS'**
12              v.                              **MOTION TO DISMISS PLAINTIFF'S
                                                SECOND AMENDED COMPLAINT**
13   A. FIGUEROA et al.,

14                              Defendants.     **[ECF No. 98]**

15                        **I. INTRODUCTION**

16          On March 16, 2011, Plaintiff Charles Johnson, a state prisoner proceeding *pro se* and *in*

17   *forma pauperis*, filed a Second Amended Complaint pursuant to 42 U.S.C. § 1983 against seven

18   prison officials at the Calipatria State Prison.  (ECF No. 97 ("SAC").)  Plaintiff sues Defendants in

19   their individual capacities.  (*Id.* at 2-3.)  He alleges Defendants conspired to delay or deny medical

20   care from November 21, 2007 through January 2, 2008.  (*Id.* at 1, 12-17.)  He further contends

21   Defendants violated his constitutional rights by failing to transport him to physical therapy

22   appointments in waist chains as required by his medical chronos.  (*Id.* at 5-11.)  Lastly, he alleges

23   Defendants retaliated against him for lodging complaints by prematurely transferring him out of

24   special needs housing.[1]  (*Id.* At 16-18.)  Plaintiff seeks damages and an injunction to prevent

25   Defendants from denying him medical treatment.  (*Id.* at 21.)

26          On March 30, 2011, Defendants filed a Motion to Dismiss Plaintiff's Second Amended

27   ────────────────────

28          [1] Plaintiff's Second Amended Complaint also appears to raise a failure to accommodate claim under the Americans
     with Disabilities Act.  However, because Defendants do not move to dismiss this claim, the Court will not address it in this
     order.

Complaint.  (ECF No. 98 ("MTD").)  Plaintiff filed an Opposition on May 2, 2011.  (ECF No. 104 ("Pl.'s Opp'n").)  On May 17, 2011, Defendants filed a Reply in response to Plaintiff's Opposition.  (ECF No. 105 ("Defs' Reply").)  After thorough review of the parties' papers and all supporting documents, IT IS HEREBY ORDERED Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## II. BACKGROUND

**A.**     **Plaintiff's Specific Factual Allegations**

In September 2006, while incarcerated at Calipatria State Prison, Plaintiff suffered a stroke, resulting in paralysis and weakness in the right side of his body.  (SAC at 4.)  Plaintiff's physical deformities are "extremely noticeable."  (*Id.* at 13.)  He is unable to move his right arm, wrist or fingers.  (*Id.*)  He also suffers from "expressive aphasia," a condition that makes it difficult for him to express himself.  (*Id*; Exhibit A.)  After his stroke, Plaintiff was housed in the Outpatient Housing Unit ("OHU"), a facility for inmates who require constant medical attention, and was authorized the permanent use of a wheelchair.  (*Id.* at 11, 24.)

Defendant Dr. D. Hjerpe, Plaintiff's primary care physician, proscribed physical therapy sessions at Pioneers Memorial Hospital to treat the residual symptoms of his stroke.  (*Id.* at 4.)  In order to accommodate his disability, Plaintiff alleges a "medical chrono" was issued authorizing medical staff to transport Plaintiff to his appointments in waist chains in an ambulance. (*Id.* at 5; Exhibits A, K.)  Plaintiff claims the chrono "exempted him from the placement of the black box," a cover placed over handcuffs to prevent an inmate from picking the lock.  (*Id.*)  Accordingly, prior to November 21, 2007, Plaintiff had been transported to physical therapy in waist chains in an ambulance or van with a wheelchair lift.  (*Id.* at 26-27.)

On November 21, 2007, Defendant A. Figueroa was assigned to transport Plaintiff to his physical therapy appointment.  (*Id.* at 5.)  Plaintiff waited for transportation in his wheelchair.  (*Id.* at 24.)  Despite Plaintiff's "obvious" physical deformities, Defendant Figueroa attempted to handcuff him.  (*Id.* at 24-25.)  Notwithstanding his medical chrono, Plaintiff contends Figueroa refused to transport him unless he submitted to wearing handcuffs and a black box.  (*Id.* at 5.)  Because Plaintiff was unable to move his right arm on his own, Defendant Figueroa lifted his arm

into place to secure the restraints. (*Id.* at 24-25.) Plaintiff informed Figueroa he had been transported to numerous physical therapy appointments without handcuffs and a black box; but in order to attend physical therapy, Plaintiff submitted to use of the restraints. (*Id.* at 5.) After five minutes, however, the pain was so severe that Plaintiff insisted Figueroa remove the black box. (*Id.*) Plaintiff claims the black box caused his wrist to "go numb and swell up." (*Id.* at 9.) Figueroa consulted with her immediate supervisor, Defendant Sargent Preciado, who instructed her to use the restraints. (*Id.* at 6.) Because Plaintiff refused to allow her to do so, Figueroa did not transport him to his appointment. (*Id.*)

On December 4, 2007, Defendant Hjerpe became aware of the incident and Plaintiff's concerns regarding the black box. (*Id.* at 7.) Thus, Dr. Hjerpe issued a second medical chrono exempting Plaintiff from the black box restraints. (*Id.* at 13.) That same day, Plaintiff alleges he suffered "another stroke like incident" – an episode of muscle spasms so painful and severe that he was taken to the emergency room. (*Id.* at 6-7; Exhibit C.) Plaintiff claims he had never suffered an episode of muscle spasms prior to November 21, 2007, nor has he experienced one since resuming physical therapy. (*Id.* at 6-7.) Dr. Hjerpe was unable to ascertain the cause of the muscle spasms. (*Id.* at 7.)

On December 5, 2007, Defendant T. Davis was assigned to transport Plaintiff to his physical therapy appointment. (*Id.*) Despite Plaintiff's medical needs, Plaintiff alleges Davis also refused to transport him unless he submitted to use of the black box. (*Id.*) Plaintiff informed Defendant Davis of Dr. Hjerpe's December 4, 2007 chrono and complained that the black box caused him severe pain. (*Id.*) Defendant Davis contacted his supervisor, Defendant Sargent Preciado. (*Id.*) Notwithstanding the medical chrono, Sargent Preciado ordered Davis not to transport Plaintiff unless Plaintiff submitted to use of the black box. (*Id.*) Again, Plaintiff was not transported to his appointment.

Later that day, Defendant G. Stratton, the transportation unit supervisor, was notified of Plaintiff's complaints regarding use of the black box. (*Id.* at 8.) Plaintiff alleges Defendant Stratton issued an order directing transportation officers to disregard Plaintiff's medical chrono and transport him in accordance with standard policies. (*Id.*)

1    Medical staff also was notified of the December 5, 2007 incident.  Though Dr. Hjerpe was

2    aware of Plaintiff's physical disabilities and complaints regarding the black box, he refused to

3    intervene on Plaintiff's behalf.  (*Id.* at 9.)  In addition, Defendant E. Orduno, a nurse, was aware of

4    Plaintiff's condition and complaints, but stopped scheduling his physical therapy appointments. (*Id.*

5    at 10.)  As a result, Plaintiff contends medical staff interfered with his recovery.  (*Id.*)

6    Plaintiff then wrote Defendant R. Delgado, Associate Warden of Health Care Operations at

7    Calipatria State Prison, regarding his medical treatment.  (*Id.* at 10.)  Despite knowledge of

8    Plaintiff's "heightened medical needs," Delgado found the transportation officers were acting

9    appropriately and took no further action.  (*Id.* at 11.)  On December 20, 2007, Plaintiff's

10   administrative appeal regarding his treatment was granted at the second level of review.  (*Id.* at 18.)

11   Thus, Plaintiff resumed physical therapy on January 2, 2008.  (*Id.* at 1.)  However, as a result of

12   Defendants' conduct, Plaintiff alleges he suffered unnecessary pain.  (*Id.* at 18.)

13   Finally, Plaintiff alleges both the November 21, 2007 and the December 5, 2007 incidents

14   were the result of prison staff conspiring to deny him medical care.  (*Id.* at 12-15.)  Specifically,

15   Plaintiff contends Defendants Stratton, Delgado, Orduno and Hjerpe conspired to cover up

16   transportation officers' refusals to transport him to physical therapy in waist chains as proscribed by

17   medical chrono.  (*Id.* at 12.)  In furtherance of this alleged conspiracy and in retaliation for

18   Plaintiff's complaints regarding his treatment, Dr. Hjerpe rescinded Plaintiff's long-term care status

19   and permanent OHU placement on January 9, 2008.  (*Id.* at 16.)  Plaintiff contends his medical

20   records evidence his inability to physically care for himself at the time Dr. Hjerpe rescinded his

21   long-term care status.  (*Id.* at 17.)  As a result of the alleged conspiracy, on March 7, 2008, Plaintiff

22   was transferred to Kern Valley State Prison, where he currently resides.  (*Id.* at 4, 16-17.)

23   **B.    Procedural Background**

24   Plaintiff filed his initial Complaint on July 11, 2008.  (ECF No. 1.)  The Complaint included

25   the following claims: (1) a violation of Plaintiff's Eighth Amendment right to medical care; (2) a

26   violation of his Eighth Amendment right to be free from cruel and unusual punishment; (3) a

27   violation of his First Amendment right to be free from retaliation for exercising his constitutional

28   rights; and (4) injunctive relief.  (*Id.* at 4-6.)  Plaintiff sued ten Defendants in both their individual

1   and official capacities.  On January 2, 2009, Defendants filed a Motion to Dismiss the Complaint

2   alleging Plaintiff's denial of medical care and retaliation claims were not exhausted, and that

3   Defendants could not be sued in their official capacity.  (ECF No. 15 at 1-2.)

4        On April 13, 2009, Magistrate Judge Jan Adler filed a Report and Recommendation Order

5   granting in part and denying in part Defendants' Motion to Dismiss.  (ECF No. 22.)  Specifically,

6   Judge Adler recommended the Court find Plaintiff's retaliation claim unexhausted.  On May 4,

7   2009, Plaintiff filed an objection to the Report and Recommendation arguing his retaliation claim

8   was properly exhausted.  (ECF No. 23.)  The objection included an inmate appeal Plaintiff filed

9   regarding retaliation.  (*Id.* App. A at 1-2.)

10       On July 7, 2009, District Judge Marilyn Huff denied Defendants' Motion to Dismiss.  (ECF

11   No. 26.)  The Court found the inmate appeal documents previously unavailable to Judge Adler

12   demonstrated Plaintiff exhausted his retaliation claim.  (*Id.* at 5-6.)  On March 5, 2010, the case was

13   reassigned to Magistrate Judge Louisa S Porter following both parties' consent to jurisdiction by a

14   United States Magistrate Judge.  (ECF No. 58.)

15       On June 30, 2010, Plaintiff filed his First Amended Complaint, raising the following claims:

16   (1) Defendants conspired to delay or deny him access to medical care; (2) Defendants used

17   excessive force in violation of the Eighth Amendment; and (3) a claim for injunctive relief.  (ECF

18   No. 72.) Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint on September 3,

19   2010.  (ECF No. 82.)  On January 25, 2011, the Court granted in part and denied in part the Motion

20   to Dismiss. (ECF No. 94.)  The Court granted the motion as to Plaintiff's denial of access to medical

21   care claim and his request for injunctive relief, but denied the motion to dismiss his excessive force

22   claim.  (*Id.* at 14.)

23       Plaintiff filed his Second Amended Complaint on March 16, 2011.  (ECF No. 97.)  The

24   complaint alleges: (1) Defendants conspired to deny Plaintiff medical treatment, cover up the

25   interference with Plaintiff's medical needs, and have him transferred; (2) Defendants were

26   deliberately indifferent to Plaintiff's medical needs in violation of his Eighth Amendment rights; (3)

27   Defendant Figueroa violated Plaintiff's Eighth Amendment right to be free from cruel and unusual

28   punishment; (4) Defendants retaliated against Plaintiff in violation of his First Amendment rights;

1    and (5) a request for injunctive relief.  (SAC at 4-18.)  Defendants filed a Motion to Dismiss

2    Plaintiff's Second Amended Complaint on March 30, 2011.  (ECF No. 98.)

3                              **III. STANDARD OF REVIEW**

4    **A.    Rule 12(b)(6) Motions to Dismiss**

5            A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

6    12(b)(6) tests the legal sufficiency of the claims in the complaint.  *See Davis v. Monroe County Bd.*

7    *of Educ.*, 526 U.S. 629, 633 (1999).  The old formula – that the complaint must not be dismissed

8    unless it is beyond doubt without merit – was discarded by *Bell Atlantic Corp. v. Twombly*, 550 U.S.

9    544, 563 n.8 (2007).

10           A complaint must be dismissed if it does not contain "enough facts to state a claim to relief

11   that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.  "A claim has facial plausibility when

12   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

13   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949

14   (2009).  The court must accept as true all material allegations in the complaint, as well as reasonable

15   inferences to be drawn from them, and must construe the complaint in the light most favorable to the

16   plaintiff.  *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citing *Karam v. City*

17   *of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003)); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d

18   1480, 1484 (9th Cir. 1995); *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

19           The court does not look at whether the plaintiff will "ultimately prevail but whether the

20   claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236

21   (1974); *see Bell Atl. Corp.*, 550 U.S. at 563 n.8.  A dismissal under Rule 12(b)(6) is generally proper

22   only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a

23   cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citing *Balistreri v.*

24   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

25           The court need not accept conclusory allegations in the complaint as true; rather, it must

26   "examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v.*

27   *Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); *see Halkin v. VeriFone, Inc.*, 11

28   F.3d 865, 868 (9th Cir. 1993); *see also Cholla Ready Mix*, 382 F.3d at 973 (citing *Clegg v. Cult*

*Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]").  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  *Parks Sch. of Bus.*, 51 F.3d at 1484 (citing *Cooper v. Bell*, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading . . . ."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996). Here, Plaintiff has attached various exhibits to his Second Amended Complaint and the Court will consider these exhibits in deciding the instant Motion.

**B.**      **<u>Standards Applicable to Pro Se Litigants</u>**

Where a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  *Id.*; *see also Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  *Jones*, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the court must give a *pro se* litigant leave to amend his complaint "unless it

1   determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v.*

2   *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted) (citing *Noll v. Carlson*,

3   809 F.2d 1446, 1447 (9th Cir. 1987)).  Thus, before a *pro se* civil rights complaint may be

4   dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies.

5   *Karim-Panahi*, 839 F.2d at 623-24.  But where amendment of a *pro se* litigant's complaint would be

6   futile, denial of leave to amend is appropriate.  *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir.

7   2000).

8   **C.      Stating a Claim Under 42 U.S.C. § 1983**

9          To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person

10   acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the

11   plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United

12   States.  42 U.S.C.A. § 1983; *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986).

13                                              **IV. DISCUSSION**

14          Plaintiff's Second Amended Complaint raises the following claims: (1) Defendants were

15   deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment; (2)

16   Defendants conspired to deny Plaintiff medical treatment, cover up the interference with Plaintiff's

17   medical needs, transfer him to a different prison; (3) Defendant Figueroa violated Plaintiff's Eighth

18   Amendment right to be free from cruel and unusual punishment; (4) Defendants retaliated against

19   Plaintiff in violation of his First Amendment rights; and (5) a request for injunctive relief.  (SAC at

20   4-18.)  Defendants move to dismiss Plaintiff's Second Amended Complaint, arguing Plaintiff fails to

21   state claims upon which relief may be granted, Defendants are protected by qualified immunity, and

22   that Plaintiff failed to exhaust his retaliation claim.  (MTD at 8-24.)

23   **A.      Eighth Amendment: Deliberate Indifference to Serious Medical Needs**

24          Plaintiff alleges Defendants were deliberately indifferent to his medical needs in violation of

25   the Eighth Amendment.  (SAC at 5.)  Defendants argue Plaintiff's deliberate indifference claim

26   should be dismissed because he fails to allege the elements necessary to raise a deliberate

27   indifference to medical care claim.  (MTD at 9-15.)

28          Deliberate indifference to a prisoner's serious medical needs constitutes a violation of the

Eighth Amendment and is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin*, 974 F.2d at 1059 (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). However, an inadvertent failure to provide medical care, mere negligence, medical malpractice, or a delay in medical care without more are insufficient to constitute Eighth Amendment violations. *See Estelle*, 429 U.S. at 105-07.

"A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin*, 974 F.2d at 1059. First, a "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Estelle*, 429 U.S. at 104). Second, a "defendant must *purposefully* ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *Id.* at 1060 (emphasis added).

**1.      Serious Medical Need**

Plaintiff claims he suffered a stroke in September, 2006, which resulted in paralysis and weakness in the right side of his body. (SAC at 4; Exhibit A.) "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989)). The Court finds, and Defendants do not dispute, that Plaintiff's stroke warranted significant medical treatment, including physical therapy. (MTD at 17; ECF No. 94 at 9.) Accordingly, Plaintiff has alleged a "serious medical need" sufficient to state a claim for deliberate indifference.

**2.      Deliberate Indifference**

"Once the prisoner's medical needs and the nature of the defendant's response to those needs have been established, a determination of whether 'deliberate indifference' has been established can be made." *McGuckin*, 974 F.2d at 1060.  First, to establish deliberate indifference, "there must be a purposeful act or failure to act on the part of the defendant." *Id; see also Farmer v. Brennan*, 511 U.S. 825, 837-39 (1994) (reasoning that deliberate indifference analysis must focus on "what a defendant's mental attitude actually was").  That is, a "defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.  Moreover, a "prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

As an initial matter, Defendants seem to suggest the Court lacks a complete understanding of Plaintiff's deliberate indifference claim.  Defendants insist the only issue here is whether the *delay* in Plaintiff's physical therapy sessions rises to the level of an Eighth Amendment violation.  (MTD at 17-18; Defs' Reply at 2-4.)  Mere delay in medical treatment, without more, is insufficient to state a claim for deliberate indifference.  *Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Defendants attempt to minimize the impact of the alleged constitutional violation on Plaintiff's recovery.  They argue Plaintiff's deliberate indifference claim should be dismissed because he fails to allege the delay in his medical care caused substantial harm, further significant injury, or the unnecessary and wanton infliction of pain.  (MTD at 17-18; Defs' Reply at 1-2.)

However, Plaintiff argues, and the Court agrees, that his allegations are not limited to a mere delay in medical treatment.  (Pl.'s Opp'n at 10; SAC 5-11.)  It is well-established that deliberate indifference to a prisoner's medical needs can be demonstrated in multiple ways, as an Eighth Amendment violation may appear when prison officials deny or delay access to medical care, *or* intentionally interfere with medical treatment once prescribed.  *Estelle*, 429 U.S. at 104-05; *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) ("Following *Estelle*, we have held that a prison official acts with deliberate indifference when he ignores instructions of the prisoner's treating physician or surgeon.").  Here, Plaintiff asserts Defendants deliberately ignored his medical

1   needs or intentionally interfered with the medical treatment Dr. Hjerpe, his treating physician,

2   prescribed after his stroke.  (Pl.'s Opp'n at 10; SAC 5-11.)  Accordingly, the Court does not adopt

3   Defendants' narrow reading of Plaintiff's Second Amended Complaint and denies Defendants'

4   Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference claim on this basis.  *See*

5   *Karim-Panahi*, 839 F.2d at 623 (holding courts must construe the pleadings of *pro se* plaintiffs

6   liberally in civil rights cases).

7        Defendants also argue Plaintiff's deliberate indifference claim should be dismissed because

8   Plaintiff fails allege facts indicating Defendants were aware of a substantial risk of harm to Plaintiff

9   and purposefully ignored or failed to respond to Plaintiff's needs.  (MTD at 18-22.)  The Court will

10  address the sufficiency of Plaintiff's pleadings with regard to each Defendant individually.  *See*

11  *Leer*, 844 F.2d at 634 (noting a "prisoner must set forth specific facts as to each individual

12  defendant's deliberate indifference").

13                    1.    Defendant Figueroa

14       Plaintiff alleges Defendant Figueroa was deliberately indifferent to his medical needs

15  because she refused to transport Plaintiff to his November 21, 2007 physical therapy appointment in

16  waist-chains in accordance with Dr. Hjerpe's medical chrono.  (SAC at 5.)  Specifically, Plaintiff

17  alleges:

18       Plaintiff informed Defendant A. Figueroa that because of his condition he was not
         required to wear the black box and that his [physician] ordered that he be taken to
19       physical therapy by Gurney and ambulance and that he has never had to be
         transported with a blackbox before.  Plaintiff asserts that his [physician] ordered
20       chrono implicitly exempted him from placement of the black box.

21  (SAC at 12-13.)  Plaintiff further alleges his physical limitations are "extremely noticeable."  (*Id.* at

22  13 n. 1.)  Therefore, when Defendant Figueroa attempted to place Plaintiff in handcuffs, she noticed

23  Plaintiff "did not have the ability to lift [his] right arm into position."  (*Id.* at 24.)  Figueroa was

24  forced to lift Plaintiff's "right arm into place so that she could place [his] right wrist into the

25  handcuffs."  (*Id.* at 24-25.)

26       Based on a liberal reading of Plaintiff's Second Amended Complaint, the Court finds

27  Plaintiff's allegations are sufficient to state a claim for deliberate indifference against Defendant

28  Figueroa.  Plaintiff asserts Figueroa was aware his physician's orders exempting him from use of the

1   black box, yet she ignored those orders. *See Wakefield*, 177 F.3d at 1165 ("allegations that a prison

2   official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim

3   for deliberate indifference").  Accordingly, Defendants' Motion to Dismiss Plaintiff's deliberate

4   indifference claim as to Defendant Figueroa is hereby **DENIED**.

5                        2.    Defendant Davis

6        Plaintiff alleges Defendant Davis also was deliberately indifferent to his medical needs

7   because he refused to transport Plaintiff to his December 5, 2007 physical therapy appointment in

8   waist-chains in accordance with Dr. Hjerpe's medical chrono.  (SAC at 6.)  In particular, Plaintiff

9   alleges he informed Defendant Davis that Dr. Hjerpe issued a chrono on December 4, 2007, which

10  "stated that he was on 'waist chain restraints' for transportation purposes."  (*Id.* at 13.)

11  Nevertheless, Plaintiff claims Defendant Davis "refused to transport Plaintiff unless he submitted to

12  the placement of the black box."  (*Id.*)  Based on a liberal construction of the pleadings, the Court

13  finds Plaintiff raises sufficient allegations to state a claim for deliberate indifference against

14  Defendant Davis.  *See Wakefield*, 177 F.3d at 1165.  Accordingly, Defendants' Motion to Dismiss

15  Plaintiff's deliberate indifference claim as to Defendant Davis is hereby **DENIED**.

16                       3.    Defendant Preciado

17       Plaintiff seems to allege Defendant Preciado was deliberately indifferent to his medical

18  needs on two occasions.  First, on November 21, 2007, Plaintiff contends Defendant Figueroa

19  contacted Defendant Preciado, her supervisor, and relayed Plaintiff's complaints regarding the black

20  box.  (SAC at 5.)  Despite Plaintiff's complaints, Preciado failed to contact medical staff to

21  determine whether Plaintiff had a medical chrono on file exempting him from the use of black box

22  restraints.  (*Id.* at 13.)  As a result, Plaintiff alleges Preciado "refused to accommodate [his] physical

23  limitations despite the instructions given by Plaintiff's Doctor in his Informational Chrono."  (SAC

24  at 6; *see also* Exhibit A.)  Similarly, on December 5, 2007, Plaintiff alleges Defendant Preciado

25  "instructed Defendant T. Davis not to transport Plaintiff to physical therapy unless Plaintiff

26  submitted to the black box[,] [n]otwithstanding a medical informational chrono in Plaintiff's medical

27  file authorizing his transport to physical therapy by ambulance."  (*Id.* at 7.)  Because Defendant

28  Preciado refused to allow his subordinates to transport Plaintiff to his appointments in waist chains,

1    Plaintiff alleges Preciado "overrode Plaintiff's Doctor's orders." (*Id.* at 8, 13.)

2          Based on a liberal construction of the pleadings, the Court finds Plaintiff has plead sufficient

3    facts that Defendant Preciado was aware of Dr. Hjerpe's medical chrono, but purposefully ignored

4    Dr. Hjerpe's orders. *McGuckin*, 974 F.2d at 1060.  Therefore, Defendants' Motion to Dismiss

5    Plaintiff's deliberate indifference claim is hereby **DENIED** as to Defendant Preciado.

6                     4.    Defendant Stratton

7          Plaintiff claims Defendant G. Stratton, the transportation unit supervisor, was notified of

8    Plaintiff's complaints on November 21, 2007 and December 5, 2007.  (SAC at 8.)  Plaintiff further

9    alleges Defendant G. Stratton was aware of Plaintiff's chronos, yet ordered transportation officers to

10   follow standard procedure instead, "thus overriding Plaintiff's medical chrono." (*Id.*)  Based on a

11   liberal reading of Plaintiff's Second Amended Complaint, the Court finds Plaintiff's allegation that

12   Defendant Stratton knowingly interfered with Plaintiff's proscribed medical treatment sufficient to

13   state a claim for deliberate indifference in violation of the Eighth Amendment.  Accordingly,

14   Defendants' Motion to Dismiss Plaintiff's deliberate indifference claim is hereby **DENIED** as to

15   Defendant Stratton.

16                    5.    Defendant Hjerpe

17         Plaintiff also alleges Defendant Dr. Hjerpe, his primary physician, was aware of Plaintiff's

18   physical condition and the "refusal of custody staff to provide Plaintiff with his proscribed medical

19   care," yet he did nothing to assist Plaintiff in obtaining relief.  (SAC at 8.)  Specifically, on

20   December 4, 2007, Plaintiff alleges he informed Dr. Hjerpe that Defendant Figueroa refused to

21   transport him in waist chains in accordance with his medical chrono. (*Id.* at 9.)  He further informed

22   Dr. Hjerpe that the black box "was extremely painful and caused his wrist to go numb and swell up."

23   (*Id.*)  Thus, on December 4, 2007, Dr. Hjerpe issued a second medical chrono exempting Plaintiff

24   from black box restraints. (*Id.*)  The following day, on December 5, 2007, Plaintiff alleges medical

25   staff informed Dr. Hjerpe that Defendant Davis and the transportation officers refused to transport

26   Plaintiff in waist chains. (*Id.*)  Nevertheless, Plaintiff alleges Dr. Hjerpe refused to intervene on

27   Plaintiff's behalf. (*Id.*)  In sum, Plaintiff contends "Dr. Hjerpe did nothing to assist Plaintiff rectify

28   this situation once custody staff refused to honor the chrono that he had written." (*Id.* at 14.)

1    Based on a liberal construction of the pleadings, the Court finds Plaintiff has plead sufficient

2    facts that Defendant Hjerpe purposefully ignored or failed to respond to Plaintiff's medical need.

3    *McGuckin*, 974 F.2d at 1060.  As a result of Dr. Hjerpe's failure to intervene on Plaintiff's behalf,

4    Plaintiff contends he "suffered an episode of muscle spasms so painful and severe that he was taken

5    to the emergency room."  (SAC at 6.)  Based thereon, the Court finds Plaintiff has raised sufficient

6    allegations to state a claim for deliberate indifference against Defendant Hjerpe. *McGuckin*, 974

7    F.2d at 1060.  Accordingly, Defendants' Motion to Dismiss Plaintiff's deliberate indifference claim

8    is hereby **DENIED** as to Defendant Hjerpe.

9    6.  Defendant Orduno

10   Plaintiff alleges Defendant Orduno, a nurse, had access to Plaintiff's medical files and was

11   aware of Plaintiff's serious medical condition.  (SAC at 8, 10, 24.)  Nevertheless, Plaintiff alleges

12   Defendant Orduno deliberately stopped scheduling his "Doctor approved and recommended

13   Physical therapy sessions" to appease Defendants Preciado, Stratton and Delgado.  (*Id.* at 10, 15.)

14   Based on a liberal construction of the Second Amended Complaint, Plaintiff's allegation that

15   Defendant Orduno knowingly refused to schedule Plaintiff for physical therapy appointments in

16   accordance with Dr. Hjerpe's orders is sufficient to state a claim for deliberate indifference. *See*

17   *Wakefield*, 177 F.3d at 1165.  Accordingly, Defendants' Motion to Dismiss Plaintiff's deliberate

18   indifference claim is hereby **DENIED** as to Defendant Orduno.

19   7.  Defendant Delgado

20   Lastly, Plaintiff alleges Defendant Delgado, Associate Warden of Health Care Operations at

21   Calipatria State Prison, was aware of Plaintiff's medical issues and the "refusal of custody staff to

22   provide Plaintiff with his proscribed medical care," yet he did nothing to assist Plaintiff in obtaining

23   relief.  (SAC at 8.)  Prior to November 21, 2007, Plaintiff claims Delgado was aware that Plaintiff, a

24   disabled inmate, had a "Doctor ordered chrono, implicitly exempting him from being placed in the

25   black box" on file.  (*Id.* at 11.)  Plaintiff further alleges custody staff notified Defendant Delgado

26   when transportation officers refused to take Plaintiff to his physical therapy appointments in waist

27   chains.  (*Id.* at 10.)  Despite his duty to act on behalf of disabled inmates, Plaintiff claims

28   "Defendant Delgado did nothing to assist Plaintiff in meeting his heightened medical needs."  (*Id.* at

11.)

Based on a liberal construction of the pleadings, the Court finds Plaintiff has plead sufficient facts that Defendant Delgado purposefully ignored or failed to respond to Plaintiff's medical need. *McGuckin*, 974 F.2d at 1060. As a result of Delgado's failure to intervene and enforce Plaintiff's transportation accommodations, Plaintiff contends he "suffered an episode of muscle spasms so painful and severe that he was taken to the emergency room." (SAC at 6.) Based thereon, the Court finds Plaintiff has raises sufficient allegations to state a claim for deliberate indifference against Defendant Delgado. *McGuckin*, 974 F.2d at 1060. Accordingly, Defendants' Motion to Dismiss Plaintiff's deliberate indifference claim is hereby **DENIED** as to Defendant Delgado.

**B.    Conspiracy**

In his second claim, Plaintiff contends Defendants conspired to deny him medical treatment, cover up the indifference to his medical needs, and transfer him to another correctional facility. (SAC at 12-17.) Defendants argue Plaintiff fails to adequately plead conspiracy because he does not allege specific facts of an agreement to interfere with Plaintiff's medical care. (MTD at 15.)

To state a claim of conspiracy under § 1983, a plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate his constitutional rights. *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey* 673 F.2d at 268; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding conclusory allegations of conspiracy insufficient to support a claim under section 1983 or 1985).

Here, the Court finds Plaintiff's Second Amended Complaint contains only a conclusory statement that prison staff conspired to deny him access to medical care and transfer him to another correctional facility. (SAC at 12.) Plaintiff fails to include factual allegations sufficient to support a conspiracy claim. Nowhere in his complaint does Plaintiff plead facts that establish the kind of agreement between the Defendants necessary for a conspiracy claim to survive a motion to dismiss. Rather, the complaint describes actions either independently conceived or actions carried out as orders in a chain of command. Accordingly, Defendants' Motion to Dismiss Plaintiff's conspiracy

1    claim is hereby **GRANTED**.

2    **C.**      **Eighth Amendment: Excessive Force**

3          Plaintiff raises an Eighth Amendment excessive force claim against Defendant Figueroa in

4    connection with her use of handcuffs and black box restraints.  (SAC at 5-6.)  On January 25, 2011,

5    the Court denied Defendants' previous Motion to Dismiss Plaintiff's excessive force claim.  (ECF

6    No. 94 at 13.)  In the instant motion, Defendants move to dismiss Plaintiff's claim on the same

7    grounds – that is, Plaintiff fails to state a claim for excessive force in violation of the Eighth

8    Amendment.  Defendants contend Plaintiff's Second Amended Complaint contains "*new allegations*

9    not previously considered by the Court."  (Defs' Reply at 5 (emphasis in original).)  Specifically,

10   Defendants claim the Second Amended Complaint indicates Plaintiff "desired" to use the black box.

11   (*Id.*)  As set forth below, the Court finds Defendants' argument disingenuous.  Nevertheless, the

12   Court will readdress Plaintiff's Eighth Amendment excessive force claim.

13         The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishments

14   Clause of the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  Where "prison

15   officials stand accused of using excessive physical force in violation of the Cruel and Unusual

16   Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort

17   to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at 6-7; *Schwenk*

18   *v. Anderson*, 204 F.3d 1187, 1196 (9th Cir. 2000); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir.

19   1986).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily

20   excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of

21   force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10.

22   Therefore, in determining whether force was used maliciously and sadistically to cause harm, courts

23   must examine: (1) the need for application of force; (2) the relationship between the need and the

24   amount of force used; (3) the extent of injury inflicted; (4) the extent of threat to the safety of staff

25   and inmates, as reasonably perceived by responsible officials on the basis of facts known to them;

26   and (5) any efforts made to temper the severity of a forceful response.  *Id*. at 7.

27         As with Plaintiff's First Amended Complaint, a liberal reading of Plaintiff's Second

28   Amended Complaint demonstrates Plaintiff has pled sufficient facts to raise a claim for excessive

force.  Plaintiff seems to acknowledge that the temporary use of some form of restraint was necessary for his transportation.  (SAC at 5.)  Under the circumstances, however, Plaintiff alleges there was no need for the excessive restraint provided by the black box.  (*Id.*)  Instead, Plaintiff contends he should have been transported to physical therapy via waist chains in an ambulance in accordance with his medical chrono.  (*Id.*)  Plaintiff also alleges Defendant Figueroa had notice of his severe medical needs and knowledge of his medical chrono.  (*Id.* at 3, 12-13.)  Plaintiff's physical deformities are "extremely noticeable."  (*Id.* at 13.)  He is partially paralyzed, confined to a wheelchair and suffers from expressive aphasia.  (*Id.*)  In light of his paralysis, Defendant Figueroa had to lift Plaintiff's right arm in to place to secure the black box. (*Id.* at 24-25.)  In addition, Plaintiff alleges he made an effort to temper the severity of the forceful response as he insisted that Defendant Figueroa remove the black box.  (*Id.* at 6.)

While the extent of the injury inflicted from the black box is unclear at this stage of the proceedings, a significant injury is not required to state a claim for excessive force.  *See Hudson*, 503 U.S. at 7 ("The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."); *Wilkins v. Gaddy*, -- U.S. --, 130 S.Ct. 1175, 1178-79 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue and excessive force claim merely because he has the good fortune to escape without serious injury.").  Here, Plaintiff alleges that the black box caused him so much pain he insisted Defendant Figueroa remove it.  (SAC at 6.)  Plaintiff claims the black box caused his wrist to "go numb and swell up."  (*Id.* at 9.)  Plaintiff also alleges he suffered an episode of severe muscle spasms on December 4, 2007, which may have been caused by the black box restraints.  (*Id.* at 9, 18.)

The Court finds Defendants' argument that Plaintiff consented to the use of excessive force disingenuous.  Defendants claim "the force used was Plaintiff's idea" and "Officer Figueroa should not be punished for facilitating Plaintiff's desire to try to use the black box."  (MTD at 23.)  The Court finds Defendants misstate the allegations of Plaintiff's Second Amended Complaint.  Plaintiff alleges he was *ordered* to submit to the restraints.  (SAC at 5-6.)  He objected to the use of the black box and even threatened to "write [Figueroa] up for refusing" to accommodate his disability.  (*Id.* at 5.)  That Plaintiff ultimately submitted to the use of restraints in an effort to attend physical therapy

1    does not demonstrate he "invited" Defendant Figueroa to use the black box as Defendants contend.

2        Accordingly, the Court finds that Plaintiff has set forth sufficient facts to satisfy the elements

3    of *Hudson* and state a claim for excessive force.  Based thereon, Defendants' Motion to Dismiss is

4    **DENIED** as to Plaintiff's excessive force claim.

5    **D.    First Amendment Retaliation**

6        Plaintiff alleges Defendants transferred him to a different institution in retaliation for filing a

7    grievance against them.  (SAC at 16-17.)  First, Defendants argue Plaintiff's retaliation claim should

8    be dismissed because the Court did not grant Plaintiff leave to raise such a claim in his Second

9    Amended Complaint.[2]  (MTD at 23-24.)  The Court has not dismissed Plaintiff's retaliation claim.

10   Contrary to Defendants' assertions, the Court does not find Plaintiff "misled" Defendants in an effort

11   to prolong litigation.  (Defs' Reply at 5-6.)  Thus, given the deference afforded to *pro se* litigants,

12   the Court declines to read its previous orders so narrowly as to preclude Plaintiff from raising his

13   retaliation claim in his Second Amended Complaint.  *See Balistreri v. Pacifica Police Dep't*, 901

14   F.3d 696, 699 (9th Cir. 1990) (noting courts have "a duty to ensure that *pro se* litigants do not lose

15   their right to a hearing on the merits of the their claim due to ignorance of technical procedural

16   requirements."); *see also Walters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996); *Garaux v. Pulley*,

17   739 F.2d 437, 439 (9th Cir. 1984).  Accordingly, Defendants' Motion to Dismiss Plaintiff's

18   retaliation claim on this basis is **DENIED**.

19       Second, Defendants argue Plaintiff's retaliation claim should be dismissed because he failed

20   to exhaust the claim through the administrative avenues available to him in prison.  (MTD at 28-31.)

21   However, the Honorable Marilyn Huff determined Plaintiff demonstrated exhaustion of this claim.

22   (ECF No. 26 at 5-6.)  Defendants seem to argue the Court should disregard the Honorable Marilyn

23   Huff's order regarding Plaintiff's February 16, 2008 CDC-1824 form because a recent Ninth Circuit

24   case, *Morton v. Hall*, 599 F.3d 942 (9th Cir. 2010), requires heightened specificity of inmate

25   grievances.  (MTD at 28-29.)  There is no indication *Morton* presents an intervening change in the

26   _____

27       [2]  As set forth above, Plaintiff's initial Complaint alleged Defendants retaliated against him for filing an inmate
     grievance.  (ECF No. 1 at 5.)  On June 30, 2010, Plaintiff filed his First Amended Complaint, which did not include a
28   retaliation claim. (ECF No. 72.)  Plaintiff's Second Amended Complaint, filed on March 16, 2011, raises the same retaliation
     claim Plaintiff brought in his initial Complaint.  (ECF No. 97.)

law as it relies on well-established jurisprudence.  599 F.3d at 946 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Griffin v. Arpaio*, 557 F.3d 117, 119 (9th Cir. 2009)).  Accordingly, the Court declines to reopen this issue.  Based thereon, Defendant's Motion to Dismiss Plaintiff's retaliation claim for failure to exhaust is **DENIED**.

**E.**     **Injunctive Relief**

Plaintiff seeks injunctive relief preventing Defendants from denying him medical treatment, including physical therapy.  (SAC at 21.)  Defendants argue Plaintiff's claim for injunctive relief against the employees of Calipatria State Prison should be dismissed because Plaintiff is now incarcerated at Kern Valley State Prison.  (MTD at 17; ECF No. 105 at 6.)

A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted.  *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  As discussed in this Court's previous Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 94 at 13-14), an injunction ordering the Defendants to provide proper medical treatment would not grant Plaintiff any relief as he is no longer under Defendants' control.  *See Flast*, 392 U.S. at 95.  Because Plaintiff is still housed at Kern Valley State Prison and not under Defendants' control, Defendants' Motion to Dismiss Plaintiff's claim for injunctive relief is hereby **GRANTED** without prejudice.

**F.**     **Qualified Immunity**

Finally, Defendants argue Plaintiff's Eighth Amendment claims for deliberate indifference and excessive force should be dismissed because Defendants are protected from suit by the doctrine of qualified immunity.  (MTD at 17-19.)  Plaintiff argues Defendants' contention that the right against cruel and unusual punishment was not "clearly established" at the time of the alleged Eighth Amendment violations is without merit.  (Pl.'s Opp'n at 19.)

Claims of qualified immunity require a two-step analysis.  As a threshold matter, courts must consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officers' conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009) (holding the order of *Saucier*'s two-step analysis should not be regarded as an inflexible requirement).  If the allegations do not establish the

violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Id.*; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.").  If the allegations could make out a constitutional violation, however, courts must then ask whether the right was clearly established– that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  The "salient question" is whether the state of the law at the time gives officials "fair warning" that their conduct is unconstitutional.  *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).  If an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity. *Saucier*, 533 U.S. at 205.

Here, as set forth above, the Court finds Plaintiff has stated a claim for Eighth Amendment deliberate indifference against Defendants Figueroa, Davis, Stratton and Orduno, as well as a claim for Eighth Amendment excessive force against Defendant Figueroa.  Therefore, Plaintiff has satisfied the first step of the *Saucier* analysis.  533 U.S. at 201.

Because Plaintiff has sufficiently stated claims for deliberate indifference and excessive force, the Court must determine whether Plaintiff's constitutional rights were clearly established at the time of the alleged incidents.  *Id.*  First, with regard to Plaintiff's deliberate indifference claim, the Court finds that the law governing a prison official's responsibilities to follow the orders or instructions of a prisoner's treating physician was clearly established at the time of the alleged violation.  *See Estelle*, 429 U.S. at 104-5 (holding deliberate indifference may be established when a prison official "intentionally interferes with treatment once prescribed" by a physician); *Wakefield*, 177 F.3d at 1165 ("allegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference").  In the specific context of this case, "it would be clear to a reasonable officer" that deliberately ignoring a physician's medical chrono regarding Plaintiff's transportation would be unlawful under clearly established Supreme Court and Ninth Circuit precedent.  *Saucier*, 533 U.S. at 201; *see also Scott v. Garcia*, 370 F. Supp. 2d 1056, 1073 (S.D. Cal. 2005) (holding defendants not entitled to qualified immunity

1   because it would be clear to a reasonable officer that ignoring a physician's orders regarding

2   plaintiff's dietary needs was unlawful under clearly established law).  Based thereon, Defendants'

3   Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference claim on qualified

4   immunity grounds is hereby **DENIED** without prejudice.

5          Second, with regard to Plaintiff's excessive force claim against Defendant Figueroa, the

6   Court finds that the law was clearly established at the time of the alleged violation that force used

7   sadistically and maliciously for the purpose of causing harm violated the Eighth Amendment,

8   regardless of whether significant injury results.  *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992);

9   *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  In the specific context of this case, "it would be

10  clear to a reasonable officer" that applying black box restraints to a visibly disabled inmate would be

11  unlawful under clearly established Supreme Court and Ninth Circuit precedent.  *See Saucier*, 533

12  U.S. at 201; *Brown v. Grove*, 647 F. Supp. 2d 1178, 1182 (C.D. Cal. 2009) (finding it is clearly

13  established law that "[a]pplying restraints, like handcuffs, too tightly can constitute excessive

14  force").  Accordingly, Defendants' Motion to Dismiss Plaintiff's Eighth Amendment excessive force

15  claim on qualified immunity grounds is hereby **DENIED** without prejudice.

16                                   **V. CONCLUSION**

17         For the reasons set forth herein, Defendants' Motion to Dismiss Plaintiff's Second Amended

18  Complaint is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, IT IS HEREBY

19  ORDERED:

20         1.      Defendants' Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference

21                 claim is **DENIED**.

22         2.      Defendants' Motion to Dismiss Plaintiff's conspiracy claim is **GRANTED**.

23         3.      Defendants' Motion to Dismiss Plaintiff's Eighth Amendment excessive force claim

24                 against Defendant Figueroa is **DENIED**.

25         4.      Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim is

26                 **DENIED**.

27         5.      Defendants' Motion to Dismiss Plaintiff's claim for injunctive relief is **GRANTED**

28                 without prejudice.

6.      Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint based on the doctrine of qualified immunity is **DENIED** without prejudice.

Based thereon, the action will proceed as currently plead on the following claims: (1) Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment; (2) Defendant Figueroa exercised excessive force in violation of the Eighth Amendment; and (3) Defendants retaliated against Plaintiff in violation of the First Amendment. If Plaintiff intends to raise a failure to accommodate claim under the Americans with Disabilities Act as his Second Amended Complaint suggests, he may proceed on this claim as well.

IT IS FURTHER ORDERED that a Case Management Conference shall be held on **September 9, 2011** at **9:30 a.m.** to address the appointment of counsel and schedule pre-trial and trial dates. Counsel for Defendants shall be present in chambers. Counsel for Defendants shall make arrangements with the institution for Plaintiff to appear telephonically. The Court authorizes Plaintiff to call into Judge Porter's chambers at **9:30 a.m.** on the day of the conference. Plaintiff shall call chambers at (619) 557-5383.

**IT IS SO ORDERED.**

DATED:  August 23, 2011

LOUISA S PORTER
United States Magistrate Judge

cc:      The Honorable Jan M. Adler
All parties